# Richmond.

## LYLES v. COMMONWEALTH.

### November 12th, 1891.

1. CRIMINAL PROCEEDINGS—*Grand juries—Murder.*—Under Acts 1889–'90, p. 91, an indictment for murder may be found by either a regular or a special grand jury.

2. IDEM—*Competency of jurors.*—Upon his *voir dire* juror stated that when the alleged offence was committed he had heard some talk about it and might have then had some opinion about it, but did not recollect; that he had no opinion now, and was impartial, and could give prisoner a fair trial;

HELD:
 Objection properly overruled.

3. IDEM—*Venire facias—Objection too late.*—Objection, after verdict, to irregularity (not prejudicial to prisoner), in the *venire facias* ordered in vacation for forty persons to be summoned from list presented by the judge, for the trial of prisoner and others not jointly indicted;

HELD:
 Too late, under Acts 1887–'88, p. 18.

4. IDEM—*Evidence certified—Rule under § 3484.*—Where the evidence (and not the facts) is certified, the accused must be considered here on review of refusal by court below to award a new trial, as admitting the truth of all the commonwealth's evidence and as waiving all his own which conflicts therewith, even where one of the commonwealth's witnesses admitted at the trial she had made different statements.

Error to judgment of corporation court of the city of Danville, rendered January 17th, 1891, whereby the plaintiff in error, James Lyles, was sentenced to be hanged in accordance with the verdict of the jury at his trial on an indictment for the murder of George Lashley. Opinion states the case.

*John D. Blackwell* and *John T. Smith,* for plaintiff in error.

*Attorney-General R. Taylor Scott,* for commonwealth.

LEWIS, P., delivered the opinion of the court.

The prisoner, James Lyles, and Margaret Lashley were jointly indicted in the corporation court of Danville for the murder of George Lashley. He was tried separately, found guilty, and sentenced to be hanged.

The first error assigned is the refusal of the lower court to quash the indictment, on the ground that it was found by a special grand jury, composed of seven jurors only. It is contended that an indictment for a capital felony can be lawfully found only by a regular grand jury, which consists of not less than nine nor more than twelve persons. But no such distinction between the powers of a regular and special grand jury is made by the statute, and for the courts to do so would be to assume legislative authority. All that the statute provides on the subject is that at least seven of a regular grand jury must concur in finding an indictment in any case, whereas an indictment may be found by a special grand jury upon the concurring votes of *five* of its members. Acts 1889–'90, p. 91.

The next question relates to the competency of the juror McGuire. Upon this point the bill of exceptions states that, upon his *voir dire,* the juror said he had heard some talk about the case at the time the alleged offence was committed, and that he might have had some opinion about it at that time, but did not recollect whether he had or not. He stated further, however, that he had no opinion on the subject then; that he stood impartial, and could give the prisoner a fair trial.

Under these circumstances an objection to his competency was overruled by the trial court, and, as we think, correctly. *Clore's Case,* 8 Gratt. 606; *Smith's Case,* 7 *Id.* 593; *Wormeley's Case,* 10 *Id.* 658.

Objection was also made to the *venire facias*, ordered in vacation, on the ground that it commanded the officer to summon *forty* persons, whose names were upon a list furnished by the judge, for the trial of the prisoner and Margaret Lashley *and others*, charged with felony, but not jointly indicted with the prisoner and Margaret Lashley. But as the objection was not made until after verdict, and as the irregularity was not to the prejudice of the prisoner, the objection came too late. Acts 1887–'88, p. 18; *Vawter's Case*, 87 Va. 245.

There was also a motion for a new trial, on the ground that the verdict was contrary to the law and the evidence, which motion was overruled; and this ruling is the subject of the next and last assignment of error.

The principal witness for the commonwealth was Mary Darkins, who, as an eye-witness of the occurrence, gave the details of the shooting by which the deceased was killed. She testified that on the night of the homicide Margaret Lashley, the wife of the deceased, and the prisoner, by clandestine appointment, attended a dance, in the neighborhood, leaving the deceased at home, and that they did not return until about 2 or 3 o'clock in the morning. It was also proven by the same witness and other witnesses for the commonwealth that the prisoner and the deceased, for some time prior to the homicide, had been on bad terms, growing out of the intimacy, it would seem, that existed between the wife of the deceased and the prisoner. It appeared that they quarrelled, and that the prisoner on several occasions threatened to kill the deceased.

The latter was much of the time absent from home, working on a railroad, and during his absence the prisoner often visited his house at night, although he had been forbidden to do so. While returning from the dance, the prisoner was heard to say that he had just one bullet left in his pistol, and that he intended to put that into the deceased before morning.

The witness, Mary Darkins, also testified that when the prisoner and the wife of the deceased returned from the dance,

they stopped at the gate, in front of the house of the deceased, and stood there talking for some time; that when Margaret went into the house, the deceased, who was sitting on the bedside, said to her: "When did I ever treat you this way?" To which she replied: "Don't let us have a quarrel." At the same time she asked him to go out of doors, and, taking him by the hand, led him out of the back door. As they got to the corner of the house the prisoner, who in the meantime had gone around the house and into the garden, raised his pistol and fired, inflicting upon the deceased a wound, which caused his death a few minutes afterwards. The witness said she witnessed the shooting from a window where she was standing at the time.

On cross-examination, however, she admitted that immediately after the shooting, she stated to a Mrs. Brown, who lived near-by, that the deceased had "accidentally shot himself while fooling with a pistol," and that she afterwards made a similar statement as a witness before the coroner's jury. But she explained in her re-examination that she said to Mrs. Brown what she did because Margaret Lashley told her to do so, and that she was influenced to repeat the statement at the inquest by the threats of the prisoner and Margaret to kill her if she did not stick to her statement made to Mrs. Brown.

It is not disputed that her evidence establishes a clear case for the commonwealth, if she was a credible witness. But the question of her credibility was a matter peculiarly for the jury, and upon this point they have found for the commonwealth. Moreover, the evidence (not the facts) being certified, the case stands in this court as on a demurrer to evidence; that is to say, the prisoner must be considered as admitting the truth of the commonwealth's evidence, and as waiving all his own evidence which conflicts therewith; and viewing the case in the light of this familiar rule, the judgment approving the verdict must be affirmed.

JUDGMENT AFFIRMED.